UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KRISTIE B.,

                Plaintiff,

v.                                                                     5:18-CV-0991
                                                                        (TWD)
COMM'R OF SOC. SEC.,

                Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

LEGAL AID SOCIETY OF MID-NEW YORK, INC.     ELIZAEBETH KRUPAR, ESQ.
 Counsel for Plaintiff
221 South Warren St., Ste. 310
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.                      DANIEL STICE TARABELLI,
SOCIAL SECURITY ADMINISTRATION             ESQ.
 Counsel for Defendant
15 Sudbury Street, Ste. 625
Boston, MA 02203

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## DECISION and ORDER

       Currently before the Court, in this Social Security action filed by Kristie B. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9 and 13.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

I.      RELEVANT BACKGROUND

   A.      Factual Background

Plaintiff was born in 1986, making her 29 years old at the amended alleged onset date and 31 years old at the date of the ALJ's decision. Plaintiff reported completing the twelfth grade and attempting to take college courses. She has no past work. Plaintiff initially alleged disability due to major depressive disorder, autism spectrum disorder, Posttraumatic Stress Disorder ("PTSD") with derealization, borderline personality disorder, anxiety, chronic pain in the lower back and hips with degeneration, fibromyalgia, gall bladder problems, and acid reflux.

   B.      Procedural History

Plaintiff applied for Supplemental Security Income on July 17, 2015, alleging disability beginning June 1, 2003.[1] (T. 138, 220-26.)[2] Plaintiff subsequently amended her alleged onset date to her protective filing date of July 17, 2015. (T. 36-37, 108, 138, 220-26, 231.) Plaintiff's application was initially denied on October 5, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). (T. 108-20, 138, 150-53.) She appeared at an administrative hearing before ALJ Kenneth Theurer on December 18, 2017. (T. 32-66.) On February 9, 2018, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 13-31.) On July 5, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-7.)

---

[1]     Plaintiff also filed an application for child's insurance benefits on July 17, 2015. (T. 121-49, 216-19.) The ALJ's decision indicates Plaintiff had already attained age 22 as of the amended alleged onset date of disability of July 17, 2015. (T. 19.) The ALJ stated finding disability before Plaintiff attained age 22 was impossible because Plaintiff amended her alleged onset date to a date when she was already 28 years of age. (*Id.*)

[2]     The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

## C. The ALJ's Decision

The ALJ made the following findings of fact and conclusions of law. (T. 19-27.) Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date of July 17, 2015. (T. 19.) Her degenerative disc disease in the lumbar spine, fibromyalgia, depression, and autism spectrum disorder are severe impairments. (*Id*.) She does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 19-20.) Plaintiff has the residual functional capacity ("RFC") to perform less than sedentary work and

> she occasionally can lift and carry 10 pounds, sit for approximately 6 hours and stand or walk for approximately 2 hours in an 8-hour day with normal breaks; occasionally climb ramps or stairs, but never ladders, ropes or scaffolds; occasionally can balance, stoop, kneel, crouch and crawl. When seated, she has a need to alternate from a seated to a standing position two times each hour for no more than 5 minutes while remaining on task and at the workstation. Mentally, [she] retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; and relate to and interact with others to the extent necessary to carry out simple tasks, but should avoid work requiring more complex interaction or joint effort to achieve work goals. She should have no more than incidental contact with the public. She can handle reasonable levels of simple work-related stress in that she can make occasional simple decisions directly related to the completion of her tasks in a stable, unchanging work environment [The term "incidental" means more than never and less than occasional]. The job should not involve direct interaction with the public, but [she] need not be isolated away from the public.

(T. 21.) Plaintiff has no past relevant work, but she can perform other jobs existing in significant numbers in the national economy. (T. 25-26.) Therefore, Plaintiff is not disabled. (T. 26-27.)

3

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff argues the ALJ improperly assessed the medical evidence including the opinion evidence and failed to discuss and weigh the opinion of Toby Davis, Ph.D. (Dkt. No. 9 at 16-23.) Plaintiff also contends the vocational expert ("VE") testimony was based on an incomplete RFC and the VE did not provide an estimate for the identified job titles to establish there were jobs available to Plaintiff in significant numbers. (*Id*. at 23-26.)

Defendant argues Plaintiff has not demonstrated the ALJ's RFC finding is unsupported and substantial evidence supports the ALJ's Step Five finding. (Dkt. No. 13 at 3-17.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work

experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Substantial Evidence Does Not Support the ALJ's RFC Analysis

##### 1. Applicable Law

###### a. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2)).

###### b. Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature

and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### c. Review of Medical Evidence

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to

substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

### 2. Opinion Evidence

In July 2015, Toby Davis, Ph.D., completed a comprehensive neuropsychological assessment. (T. 682-94.) Dr. Davis diagnosed autism spectrum disorder (without intellectual impairment, without language impairment, requiring substantial support), major depressive disorder (severe, recurrent with melancholic features), and PTSD with derealization and indicated a guarded prognosis. (T. 693.) In determining Plaintiff's RFC and discussing the opinion evidence, the ALJ did not discuss or assess Dr. Davis' assessment nor does it appear that the ALJ discussed this evidence elsewhere in his decision. (T. 19-26.)

In August 2015, consultative examiner Dennis Noia, Ph.D., observed a constricted affect, neutral mood, intact attention and concentration, and intact recent and remote memory skills. (T. 697.) Dr. Noia diagnosed autism spectrum disorder, major depressive disorder without psychotic features, fibromyalgia, and chronic pain. (T. 698.) He opined Plaintiff appeared to have no

8

limitations in understanding and following simple instructions and directions, maintaining attention and concentration for tasks, or making appropriate decisions. (*Id*.) She had mild limitations performing simple and complex tasks, attending to a routine and maintaining a schedule, and learning new tasks. (*Id*.) She appeared to be able to relate to and interact moderately well with others. (*Id*.) Dr. Noia opined Plaintiff appeared to have moderate-to-marked limitations regarding her ability to deal with stress with her difficulties being caused by psychiatric problems; the results of the examination appeared to be consistent with psychiatric problems which might at times significantly interfere with her ability to function on a daily basis. (*Id*.) The ALJ afforded partial weight to Dr. Noia's opinion "because it was supported with an explanation and by relevant evidence; however, the record only supports a moderate limitation in the ability to handle stress, not a marked limitation." (T. 24, 695-700.) The ALJ also noted "Dr. Noia had program familiarity, professional expertise and met with the claimant, but only for a one-time examination." (T. 23-24.)

In September 2015, consultative examiner Elke Lorensen, M.D., observed a squat at 40 percent and a normal gait and stance. (T. 702.) Plaintiff had a limited range of motion in the lumbar spine, negative straight leg raise testing bilaterally, a limited range of motion in the hips and knees, decreased sensation to light touch and sharp in the lower extremities, and 10 positive trigger points including bilateral occipital, bilateral trapezius, bilateral supraspinatus, bilateral gluteal, and bilateral cervical. (T. 703.) Dr. Lorensen diagnosed back pain, bilateral hip pain, fibromyalgia, status post gastric bypass for morbid obesity, and a history of pulmonary embolism. (T. 704.) Dr. Lorensen opined Plaintiff had no gross limitations in sitting, standing, walking, and handling small objects with the hands and moderate-to-marked restrictions in bending, lifting, reaching, and squatting. (*Id*.) The ALJ afforded great evidentiary weight to Dr.

Lorensen's opinion "because of the personal examination of the claimant by a recognized medical source with program familiarity who supported the opinion with an explanation." (T. 24, 701-06.) The ALJ noted relevant evidence supported the opinion, "including gastric bypass surgery notes of William Graber, M.D., from October 2013." (T. 24, 314-31.) The ALJ also noted the "physical work limitations found are based on the report of Dr. Lorensen. No treating source provided a list of function-by-function limitations. Justification for the limitations found is provided by numerous findings upon testing." (T. 25, 788-90, 846, 885.)

As part of the initial determination in October 2015, non-examining state Agency consultant G. Kleinerman, M.D., opined that Plaintiff had no restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation of extended duration and that Plaintiff would be able to complete simple work. (T. 113-14, 116-18.) The ALJ afforded great evidentiary weight to Dr. Kleinerman's opinion "because Dr. Kleinerman has program knowledge, is a psychiatrist with professional expertise in the areas being evaluated and the opinion is consistent with the record as a whole." (T. 24, 114.)

In April 2017, treating sources Linda MacQueen, PNP, and Steven Fogelman, M.D., completed an assessment indicating Plaintiff began treatment in 2004 and had been diagnosed with major depressive disorder and borderline personality disorder. (T. 710.) She was on medication, but had a fair prognosis and was noted to be non-compliant with treatment and lacking the motivation to follow a treatment plan. (T. 710.) PNP MacQueen and Dr. Fogelman opined Plaintiff had mild limitations in the ability to make judgments on simple work-related decisions and understand and remember complex instructions and moderate limitations in the ability to carry out complex instructions and make judgments on complex work-related

10

decisions. (T. 707.) She was able to understand and remember simple instructions but lacked motivation to follow through and avoided responsibility. (*Id*.) She also had moderate limitations in the ability to interact appropriately with the public, supervisors and coworkers, and respond appropriately to usual work situations and to changes in a routine work setting. (T. 708.) PNP MacQueen and Dr. Fogelman noted Plaintiff had avoidant personality tendencies, borderline personality traits (with impaired attachment issues and relationship difficulties), poor problem solving, limited judgment, poor hygiene, poor financial and time management, and poor management of household tasks (numerous warnings of eviction). (*Id*.) The ALJ afforded great weight to this opinion because they "were treating sources familiar with the claimant for a lengthy period and expressed an opinion related to their specialty." (T. 25, 707-11.) The ALJ noted the "greatest evidentiary weight [was] given this assessment because of the treating relationship for an extended period. It forms the basis of the mental limitations stated in the [RFC] assessment." (T. 25.)

### 3. Analysis

Plaintiff argues the ALJ improperly assessed the opinion evidence in improperly considering Dr. Lorensen's opinion and failing to discuss and weigh Dr. Davis' assessment. (Dkt. No. 9, at 16-23.) The Court finds Plaintiff's argument regarding Dr. Lorensen's opined reaching limitation to be persuasive requiring remand, but finds Plaintiff's arguments regarding the opinions of Dr. Davis and Dr. Fogelman with PNP MacQueen unpersuasive.

#### a. Dr. Davis' Assessment

Plaintiff contends the ALJ failed to evaluate Dr. Davis' opinion and ignored this probative evidence which contained non-exertional limitations not included in the RFC. (Dkt. No. 9 at 22-23.) Defendant argues Dr. Davis' statements were not medical opinions and the ALJ

11

therefore did not err by failing to explicitly evaluate them. (Dkt. No. 13 at 10.) Defendant maintains that, "even if they were medical opinions, Dr. Davis' findings would not have changed the outcome of the proceeding, so the ALJ's failure to acknowledge them was harmless." (*Id*. at 10-11.) Defendant also argues Plaintiff's diagnoses of autism spectrum disorder, major depressive disorder, and posttraumatic stress disorder were acknowledged by the ALJ and that these diagnoses say nothing about her ability to work. (*Id*. at 11.) The Court is persuaded by Defendant's arguments and finds any failure by the ALJ to explicitly consider Dr. Davis' assessment to be harmless error for the following reasons.

First, Dr. Davis' assessment on its face does not contain a function-by-function analysis or provide insight into Plaintiff's ability to perform work functions. (T. 682-94.) As Defendant points out, the RFC finding is consistent with Dr. Davis' statement that Plaintiff had a limited ability to manage interpersonal relationships in a comfortable and rewarding manner and the RFC adequately reflects Dr. Davis' statement that Plaintiff gave evidence of "a serious impairment in her ability to think logically and coherently" because it limited her to following simple instructions, performing simple tasks, and making occasional simple decisions directly related to the completion of her task in a stable, unchanging environment. (Dkt. No. 13 at 12; T. 21, 689.)

Indeed, it appears that the crux of Dr. Davis' assessment is the diagnoses rendered including autism spectrum disorder, major depressive disorder, and PTSD. (T. 693.) Consultant Dr. Kleinerman noted these diagnoses in his assessment during the initial determination, which the ALJ explicitly reviewed and weighed in determining Plaintiff's RFC. (T. 20, 24, 114.) Consultative examiner Dr. Noia diagnosed autism spectrum disorder and major depressive disorder and offered a functional assessment which the ALJ explicitly reviewed and weighed.

(T. 20, 23-24, 698.)  Additionally, the ALJ found depression and autism spectrum disorder to be severe impairments at Step Two and considered them in relation to the listings and when determining Plaintiff's RFC.  (T. 19-25.)

Second, as alluded to above, the ALJ's decision indicates careful consideration of the medical and opinion evidence of record.  (T. 20-25.)  The ALJ adequately reviewed the opinions of Dr. Kleinerman and Dr. Noia in assessing Plaintiff's non-exertional mental limitations and explained his reasons for the weight and consideration given to those opinions.  (T. 23-24.)  It is the ALJ who has the responsibility of reviewing all the evidence before him, resolving inconsistencies, and making a determination consistent with the evidence as a whole.  *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014).

Third, as Defendant argues, given the nature of Dr. Davis' assessment, explicit review by the ALJ of this assessment would not have changed the outcome of the ALJ's decision.  (Dkt. No. 13, at 10-11.)  *See Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting that an error is considered harmless where proper consideration of the physician's opinion would not change the outcome of the claim) (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)); *Camarata v. Colvin*, 14-CV-0578 (MAD/ATB), 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (denying the request for remand because application of the correct legal standard would not change the outcome).  The Court therefore finds that the ALJ's failure to provide an explicit review of Dr. Davis' assessment was harmless error and that remand is not required on this basis.

### b. Dr. Lorensen's Opinion

Plaintiff contends the ALJ afforded great weight to consultative examiner Dr. Lorensen's opinion, but chose not to adopt the entire opinion including that Plaintiff has a moderate-to-marked limitation in bending, lifting, reaching, and squatting. (Dkt. No. 9 at 16-17.) Plaintiff maintains the ALJ selected certain parts of this opinion to incorporate into the RFC, but ignored and excluded other parts entirely. (*Id*. at 17-19.) Defendant contends the ALJ fully accounted for Dr. Lorensen's opined limitations in bending and squatting, though he used different terminology such as crouching instead of squatting and four categories which would constitute bending including stooping, kneeling, crouching, and crawling. (Dkt. No. 13 at 4-5.) Defendant also maintains that the three jobs which the ALJ relied upon in finding Plaintiff not disabled at Step Five do not require any stooping, kneeling, crouching, or crawling. (*Id*. at 5-6.) Regarding the moderate-to-marked limitation in reaching opined by Dr. Lorensen, Defendant acknowledges the RFC does not include any reaching limitations and the three jobs relied on by the ALJ at Step Five require frequent-to-constant reaching. (*Id*. at 6.) However, Defendant maintains remand is not necessary "for reevaluation of a limitation that Plaintiff herself admits she does not experience." (*Id*.; T. 253.)

The Court finds that Defendant's reliance on Plaintiff's admission she does not experience reaching limitations is misplaced and that Defendant seeks to provide *post hoc* rationalization for the ALJ's failure to sufficiently explain his analysis regarding Dr. Lorensen's opined reaching limitation. The ALJ's analysis included a brief summary of Dr. Lorensen's opinion including the moderate-to-marked limitation in reaching and the ALJ did purport to afford great evidentiary weight to this opinion, but the ALJ did not include any explicit discussion of this opined limitation or any explanation as to why no reaching limitations were

14

included in the RFC. (T. 21, 24.) Defendant's arguments now attempt to fill the gap in the ALJ's analysis while maintaining remand would be pointless. (Dkt. No. 13 at 6-7.) The Court disagrees and cannot accept Defendant's contention that it appears the ALJ intended to reject Dr. Lorensen's reaching limitation given the ALJ's discussion of Plaintiff's statement that she had no difficulty reaching. (Dkt. No. 13 at 6; T. 22.) *See Bartrum v. Astrue*, 32 F. Supp. 3d 320, 331 (N.D.N.Y. 2012) (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("This Court simply cannot, and will not, re-weigh the medical evidence and/or 'create *post-hoc* rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.'") (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Melville*, 198 F.3d at 52); *Petersen v. Astrue*, 2 F. Supp. 3d 223, 234 (N.D.N.Y. 2012) (stating the same proposition). It is not the function of this Court to speculate as to what evidence and legal standards the ALJ based his decision on, nor to supply its own rationale where the ALJ's decision is lacking. *Booker v. Astrue*, 07-CV-0646 (GLS), 2011 WL 3735808, at *5 (N.D.N.Y. Aug. 24, 2011) (indicating that "'it is an elementary rule that the propriety of agency action must be evaluated on the basis of stated reasons,'" and that "a court 'may not properly affirm an administrative action on grounds different than those considered by the agency'") (quoting *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983); *Burgess*, 537d F.3d at 128).

Further, the ALJ is required to provide a rationale in the written decision sufficient to allow this Court to conduct an adequate review of his findings. *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("A court 'cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.'") (citation omitted); *Hickman ex rel.*

15

*M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (citation omitted). Because the ALJ's decision fails to adequately address the reaching limitation opined by Dr. Lorensen, whose opinion the ALJ purported to afford great weight, the Court finds remand is necessary for proper consideration of this opinion evidence and Plaintiff's RFC.

### c. PNP MacQueen and Dr. Fogelman's Opinion

Plaintiff argues the ALJ also afforded great weight to the opinion of Dr. Fogelman and PNP MacQueen and again used parts of this opinion in the RFC while ignoring and excluding other parts. (Dkt. No. 9 at 20-21.) Plaintiff maintains the ALJ failed to include opined limitations in interacting with coworkers and supervisors in the RFC and seemingly substituted his own opinion regarding Plaintiff's limitations. (*Id*. at 21.) The Court does not find these arguments persuasive. The ALJ adequately summarized this opinion and afforded it great weight because of the extended treating relationship, noting this opinion formed the basis of the mental limitations in the RFC. (T. 24-25.) Indeed, the mental RFC is a detailed assessment of Plaintiff's functioning in light of her mental impairments and limitations as opined by her treating providers. (T. 21.) The Court will not now reweigh the evidence before the ALJ regarding Plaintiff's mental limitations and therefore finds that the mental RFC is supported by substantial evidence. *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence' where that resolution is supported by substantial evidence) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)).

For the reasons identified above, remand is necessary for proper evaluation of Dr. Lorensen's opined reaching limitation. However, the ALJ should conduct a new RFC analysis on remand and also provide explicit consideration of Dr. Davis' assessment.

**B.     The ALJ's Step Five Determination**

Because remand is necessary to address the issues identified above, the Court declines to reach a finding on Plaintiff's other arguments regarding the ALJ's Step Five determination and the VE testimony. (Dkt. No. 9 at 19-26.) However, upon remand, the ALJ should conduct a new Step Five determination, making sure to address any conflicts in the VE's testimony.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **<u>DENIED</u>**; and it is further

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical opinions and Plaintiff's RFC, and other further proceedings, consistent with this Report.

Dated: December 12, 2019
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge